**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JAMIE ANGLEMYER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-CV-652-JD-MGG |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Jamie Anglemyer applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to degenerative disc disease, mild arthritis in his right hand, depression, personality disorder, and arterial occlusion. Mr. Anglemyer filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition, and Mr. Anglemyer filed a reply. The Court finds that the ALJ improperly evaluated medical opinion evidence demonstrating Mr. Anglemyer's difficulties with concentration and social interactions. Remand is required for these reasons.

## I.    Factual Background

Until he stopped working in 2011, Mr. Anglemyer worked as a welder. Mr. Anglemyer suffers from degenerative disc disease, mild arthritis of the right hand, history of a seizure disorder, history of peripheral vascular disease/left lower extremity occlusion; hernia; coronary artery disease; depression/bipolar disorder; personality disorder; and, anxiety/posttraumatic stress disorder ("PTSD") (20 C.F.R. § 404.1520(c)). The ALJ found these impairments to be

severe. Mr. Anglemyer also had a variety of impairments that the ALJ found to be nonsevere, including diabetes, chronic obstructive pulmonary disease, sleep apnea, restless leg syndrome, hyperlipidemia, high cholesterol, GERD, esophagitis, diverticulitis, anal fissure, hip pain, paranoid schizophrenia, and periods of abdominal pain and/or rectal bleeding. (R. 1236-38). Mr. Anglemyer was treated for his mental impairments at Northeastern Center from 2010 through his date last insured, where the records reveal an ongoing attempt to identify the most effective medication and medication amounts. A 2012 report from Northeastern Center noted his diagnoses as severe depressed bipolar disorder without psychotic features, primary insomnia, and borderline personality disorder. The report noted that Mr. Anglemyer had frequent and severe mood swings leaning more towards depression, and that he was easily offended and irritable with fears and worries about abandonment. The report stated Mr. Anglemyer was impulsive and had been suicidal. Finally, the report noted that although Mr. Anglemyer has done better at times, it was never significantly better and he had no periods of remission.

Mr. Anglemyer attended a consultative mental status exam at the request of the Disability Determination Bureau in January 2013. At this exam, Mr. Anglemyer was noted to be irritable, with poor concentration, feelings of worthlessness, psychomotor agitation, loss of interest, and thoughts of dying. The consultative examiner indicated that Mr. Anglemyer suffered from an anxiety disorder with limited insight into his own behavior. The consultative examiner opined that Mr. Anglemyer would need support from others to accomplish daily tasks. The consultative examiner diagnosed chronic PTSD and recurrent major depressive disorder.

Mr. Anglemyer first applied for benefits in 2009. The ALJ issued an unfavorable decision, and the District Court for the Northern District of Indiana affirmed the ALJ's decision on April 2, 2014. While these first applications were pending in court on appeal, Mr. Anglemyer

filed a new application for benefits in November 2012, alleging disability since July 23, 2011. The ALJ found him to be not disabled in November 2013, and Mr. Anglemyer requested a review by the Appeals Council. The Appeals Council vacated the November 2013 decision and instructed the ALJ to discuss medical opinion evidence and to determine the RFC in light of Mr. Anglemyer's use of a cane. The ALJ held a second hearing in August 2014, and, on November 12, 2014, the ALJ again found Mr. Anglemyer to be not disabled. The Appeals Council denied Mr. Anglemyer's request for review on January 27, 2016, and Mr. Anglemyer filed a civil action under cause number 3:16-cv-167, challenging the November 12, 2014 decision. On August 15, 2017, the Court issued an opinion and order remanding Mr. Anglemyer's second case for further proceedings. On September 14, 2017, the Appeals Council remanded the case to the ALJ for further proceedings.

On March 6, 2018, the ALJ conducted a new hearing. He issued a new decision on April 26, 2018. In this decision, the ALJ made the following residual functional capacity:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with frequent fingering, gripping, and fine manipulation with the dominant right extremity. Could occasionally climb stairs and ramps. Never climb ladders, ropes, and scaffolds with occasional balancing, occasional stooping, kneeling, but no crouching or crawling. The Claimant needed to avoid concentrated exposure to extreme cold, extreme heat, humidity, excessive vibration, and wet and slippery surfaces. He must also have avoided concentrated exposure to driving forklifts, trucks, the operational control of dangerous moving machinery, and to unprotected heights. Mentally, the claimant had the capacity to perform work within a low stress job requiring only occasional decision-making. He could meet production requirements allowing one to sustain a flexible and goal-oriented pace with no interaction with the general public, and occasional interaction with co-workers and supervisors other than what is necessary for instruction and task completion. He should not have been exposed to intense or critical supervision, and would have worked best alone or in semi-isolation.

(R. 1242). Finding that Mr. Anglemyer could have performed other work in the economy, the

ALJ found that Mr. Anglemyer was not disabled. The Appeals Council declined review, and Mr. Anglemyer filed this action seeking judicial review of the Commissioner's decision.

## II.      Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.    Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that

may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

IV.     **Discussion**

Mr. Anglemyer offers three arguments in support of reversal. First, he argues that the ALJ erred in weighing the medical opinions, specifically treating psychiatrist Dr. Ali, consultative examiner Dr. Wade, and the state agency physicians. Second, Mr. Anglemyer argues that the ALJ failed to adequately account for his moderate limitations in concentration and social interaction in assessing the RFC. Finally, he argues that the ALJ's finding that he could frequently engage in fingering, gripping, and fine manipulation with dominant right extremity is unsupported by substantial evidence. The Court need only address the first argument, as the Court agrees that the ALJ erred in weighing the medical opinions of Dr. Ali and Dr. Wade, and that that error requires remand.

"A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). The ALJ is not required to accept a treating physician's opinion, but an "ALJ who declines to give controlling weight to the opinion of a treating physician must offer 'good reasons' that are 'sufficiently specific' in explaining what weight, if

any, she assigned it." *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Dr. Ali began treating Mr. Anglemyer in September 2010 and continued to see him quarterly. Dr. Ali diagnosed Mr. Anglemyer with bipolar disorder depressed, severe, without psychotic features, as well as borderline personality disorder. (R. 715). In December 2012, Dr. Ali countersigned a psychiatric status opinion written by Mr. Anglemyer's case manager, Ms. Scott. Ms. Scott regularly saw Mr. Anglemyer for counseling, and occasionally provided joint counseling for Mr. Anglemyer and his wife. In this opinion, Ms. Scott noted that on the day of the evaluation, Mr. Anglemyer had appropriate mood for the most part, coherent speech, was alert, and his thought processes were mostly logical. (R. 716). When asked for objective signs and symptoms to justify the diagnoses, Ms. Scott stated that Mr. Anglemyer suffered from frequent and severe mood swings, leaning more towards depression. (R. 716). She further found that Mr. Anglemyer was easily offended and irritable, was impulsive, had been suicidal, and was difficult to control at times. (R. 716). Ms. Scott stated that although there have been times where Mr. Anglemyer "has done better," they were "not significant" and he had "no periods of remission." (R. 717). Ms. Scott also noted that Mr. Anglemyer had poor listening and would have difficulty following directions if he was not in agreement, and he would have difficulty working with others. (R. 719). Dr. Ali countersigned this opinion, affirming his support of the opinion. The Commissioner makes no argument that this opinion should be treated as an opinion written by a non-acceptable medical source since it was written by a licensed social worker (an "other source" under the regulations) and countersigned by the treating psychologist. On the contrary, the Commissioner appears to agree with Mr. Anglemyer and consistently refers to the opinion as "Dr. Ali's opinion." The ALJ also failed to address the issue. While it is unclear if this

opinion truly is a treating opinion, Dr. Ali and Ms. Scott both treated Mr. Anglemyer regularly at Northeastern Center, and both Mr. Anglemyer and the Commissioner consider it a treating opinion.

However, even if the opinion is not a treating opinion, but rather an opinion written by an "other source," the opinion must still be discussed and analyzed properly. The same factors from 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply to "other sources" in the same way they apply to acceptable medical sources. SSR 06-03p, 2006 SSR LEXIS 5, at *8-10. Even if Dr. Ali/Ms. Scott's opinion is not considered a treating opinion, the ALJ still erred in failing to support the decision with substantial evidence.

The ALJ gave Dr. Ali/Ms. Scott's opinion little weight, noting that the "actual findings noted were fairly benign." (R. 1250). The ALJ noted Ms. Scott's finding of "severe mood swings," but found they were inconsistent "with other [Northeastern Center] records." (R. 1250). The ALJ further noted that a March 12, 2013 visit with Dr. Ali was "completely normal." (R. 1250). Finally, the ALJ looked at a February 19, 2013 examination, where Dr. Ali noted normal thought processes, including cognitive reasoning, content, and abstract reasoning, and that abstract reasoning, associations, and recent and remote memory were all intact. (R. 1250). The ALJ also noted that Dr. Ali reported Mr. Anglemyer's attention span and concentration were "good" at this 2013 visit. (R. 1250).

While Dr. Ali did find Mr. Anglemyer's speech and thought processes to be normal in March 2013, he also found that Mr. Anglemyer's judgment and insight were limited. (R. 913). The February 2013 progress note shows the same findings. (R. 915-17). However, progress notes from 2011 through 2013 written by Ms. Scott note that he demonstrated very little insight regarding the impact of his own thinking and behavior upon personal outcomes, he often

minimized his own behavior, he often projected blame on to others, he had an angry/frustrated mood, he had a manipulative interpersonal communication style, and he was childish in relationships. (R. 832, 836, 837, 842, 843, 846, 849, 850, 852, 854, 855, 858, 859, 860, 886, 867, 868, 874). Moreover, the February and March 2013 progress notes from Dr. Ali were checklist progress notes, with little to no room for a narrative discussion. Narrative discussions from February through December 2012 show regular increases in medication, indicating that Mr. Anglemyer still had unresolved symptoms. (R. 918, 919, 922). The progress notes from Ms. Scott show repeated mentions of lack of insight, anger and frustration, and manipulative interpersonal relationships.

The ALJ erred in finding Dr. Ali/Ms. Scott's opinion to be inconsistent with the other Northeastern Center progress notes. The Commissioner argues that the ALJ discussed these progress notes, finding that during most visits he was pleasant, smiling, friendly, open, and/or cooperative. The ALJ makes no such discussion in his analysis of the opinion evidence. Moreover, the same progress notes that state Mr. Anglemyer presented as smiling or pleasant also note symptoms such as thought distortions, frustrations, very little insight regarding the impact of his own thinking and behavior upon personal outcomes, minimization of his own behavior, and projecting blame on others. (R. 832, 836, 837, 839, 842, 843, 846, 849, 850, 852, 854, 855, 858, 859, 860, 886, 867, 868, 874). The ALJ ignored all of the sub-optimal findings in his analysis of Dr. Ali/Ms. Scott's opinion and instead cherry picked evidence to support his finding of no disability. The Commissioner argues that the ALJ addressed the evidence in the decision. Yet he fails to cite to any page in the ALJ's decision, and this Court cannot find any analysis or discussion of the negative symptoms noted in the Northeastern Center progress notes.

The ALJ also dismissed Dr. Ali/Ms. Scott's opinion by stating that the statements "appear to have been based upon the claimant's subjective reports." (R. 1250). However, the use of self-reported symptoms plays a significant role in cases involving mental impairments, and the Seventh Circuit has criticized giving less weight to a mental health professional's opinion simply because the assessment relies on a patient's self-reported symptoms. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (citing *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)). "[A]ll findings in psychiatric notes must be considered, even if they were based on the patient's own account of [his] mental symptoms." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). To discount an evaluation merely because it relied on a claimant's self-reported symptoms "ignores that the subjective report is not simply transcribed: it is filtered through the psychologist's training and judgment." *Thompson v. Berryhill*, 722 Fed. Appx 573, 581 (7th Cir. 2018). The ALJ improperly dismissed Dr. Ali/Ms. Scott's opinion simply because it was based on Mr. Anglemyer's self-reported subjective symptoms.

Furthermore, the ALJ failed to discuss how Dr. Ali/Ms. Scott's opinion was consistent with the opinion of Dr. Wade, the consultative examiner. Dr. Wade provided a psychological evaluation report on January 9, 2013. (R. 732). Dr. Wade noted that Mr. Anglemyer exhibited symptoms of a mood disorder, such as fatigue, excessive sleeping, poor concentration, feelings of worthlessness, psychomotor agitation, loss of interest, and thoughts of dying. (R. 732). Dr. Wade also noted possible PTSD due to irritability, insomnia, nightmares, and angry moods. (*Id.*) Dr. Wade further noted symptoms of an anxiety disorder due to his past of physical and sexual abuse, mistrust of people, difficulty tolerating the way bosses talk to him, irritability, hypervigilance to perceived threats, symptoms of panic in crowds, and a tendency to avoid abuse. (R. 734-35).

Dr. Wade found that although Mr. Anglemyer was mostly cooperative, "his interactions with this examiner were somewhat poor." (R. 735). She found Mr. Anglemyer to be irritable, although his speech was logical and coherent. (*Id.*) Although she found him to be a poor historian, she noted his insight was limited, and he was easily confused at times. (*Id.*) She found his understanding to be variable, with poor memory task of instructions and poor concentration. (R. 736). Finally, she opined that he would likely have difficulty in social interactions. (*Id.*) She then assigned him a GAF score of 50. (R. 737). She also noted that he has problems with his primary support group (specifically towards his father, son, and wife), problems related to his social environment (verbally aggressive and avoids social interactions), occupational problems (fired for verbal aggression and pushing a coworker, as well as difficulties with authority), and housing problems (has been homeless several times). (*Id.*)

The ALJ gave this opinion little weight, simply by reason that Dr. Ali's checklist from February 2013 contradicted Dr. Wade's opinion. However, the ALJ fails to discuss how Dr. Wade's opinion is consistent with Dr. Ali/Ms. Scott's opinion, as well as with Ms. Scott's progress notes. While Dr .Wade's opinion is inconsistent with one note from Dr. Ali in February 2013, it is consistent with multiple progress notes from Northeaster Center, as well as with Dr. Ali/Ms. Scott's opinion. Considering Mr. Anglemyer's multiple diagnoses of severe mental impairments, the ALJ improperly relied on a report from a single day to discredit the consultative examiner's opinion, when multiple other reports are consistent with the opinion. "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). While Dr. Ali may have noted fewer symptoms on one date in 2013, multiple other progress notes support Dr. Wade's opinion that Mr. Anglemyer may struggle in social situations.

One "good" progress report says little about Mr. Anglemyer's overall condition and ongoing struggles, noted in multiple other progress notes. The ALJ's failure to properly weigh the medical opinion evidence requires remand.

The weight given to the opinions of both Dr. Ali/Ms. Scott and Dr. Wade were not supported by substantial evidence. Remand is required for the ALJ to properly discuss both opinions and support the decision with substantial evidence. The Court cannot predict that the RFC would be the same had the ALJ properly analyzed both opinions. Since the vocational expert's testimony was also based on this RFC, the Court cannot determine whether the same jobs would be available to Mr. Anglemyer if all the opinion evidence had been properly considered.

## CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:   November 8, 2019


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court